Will the clerk please call the next case? 423-0754-WC, Tazewell County Appellant by Michael Bantz v. the Illinois Workers' Compensation Comm'n, Dora Potts, Appalee by Kevin Elder. Mr. Bantz, you may proceed. Thank you. My name is Michael Bantz. I'm here for the Appellant Employer, Tazewell County. May it please the court, counsel. The number one most important issue in this case is that the petitioner's own surgeon did not give a causation opinion linking her diagnosis to her job duties. Dr. Merkley said, quote, while I do not feel that the nature of her duties is the causation of her rotator cuff tear, repetitive activities at shoulder level or even waist level can result in increased pain in patients who have preexisting rotator cuff pathology. This is the most important fact of the case, and it is the undisputed literal language used by Dr. Merkley to explain his opinions on causation. This case presents the legal question of whether employees have the right to turn an injury that is not related to work into a compensable work-related injury by choosing to work with an injured body part. The court should answer that question with a no. The rights of the employees should not be expanded to allow them to turn unrelated injuries into work-related injuries. To do so would undermine the integrity of our workers' compensation system. So is it, is it your, is it your thesis that if an employee has a preexisting condition and the work aggravates that preexisting condition in a manner that only increases the pain being suffered by the employee, that that is not compensable under the act? Yes, that's correct. That's an excellent way to describe the issues involved here. The law requires that the actual anatomical or physical condition of ill being, that is what is wrong with the body, must have been at least aggravated by a work accident or repetitive trauma. To expand the rights of employees to allow an increase of pain while working with an injury would open up floodgates of a much larger number of cases that to the normal person would seem obviously unrelated. And what Dr. Merkley said about increased pain while working with an injury is true of literally all injuries. If I injure a body part at home and then I go into work the next day, trying to use that body part, I'm always going to feel an increased pain when compared with resting that body part or trying not to use it. That's part of the nature of an injury itself. But this doesn't mean that my actions at work is what caused my injury that happened at home the day before or caused the anatomical problem in any way. And so how do you define condition of ill being? The condition of ill being refers to diagnosis given by a doctor, the body, what the surgeon might be able to fix either through surgery or an injection, or sometimes just with rest or physical therapy and medications that contrasts with the subjective symptoms of pain or discomfort, stiffness, things like that, that can't be objectively measured or quantified. Oh, I'm sorry. Go ahead. Oh, thank you. Is there a case that you rely on here or something else? So I think the best cases to look at, I wish there was something better on point, but I think the best cases to look at involving this are Cicero and, I These are in pages 24, 25 of my brief where I address these issues. And both those cases specifically talk about aggravations, which are also central to the case at bar. And these cases refer to the specific condition as being the diagnosis involved. And more broadly speaking, when we look at commission decisions and appellate what tends to be analyzed is a rotator cuff tear, a carpal tunnel syndrome, a diagnosis from a medical professional that gives us some insight into what's wrong with that person and how that might affect them. So for instance, you see common values across meniscus tears or rotator cuff tears, because generally speaking, the commission views those anatomical conditions as being roughly similar in determining PPD values or other ways in which they affect the case. And I think that that's analogous here. Let's walk back a step or two. In answer to Justice Hoffman's question as to your thesis of this case, then should pain management ever be compensable under the act? I think if the pain management is prescribed because the claimant has an injury or problem with their body that is objectively verified, then yes, those treatments are reasonable and should be awarded under the act. But those treatments, Mr. Banch, are not for repair of an anatomical injury. They're treatments for pain as a result of the anatomical injury. So what's the difference? I think the difference is that the pain there is a result of the anatomical injury itself, and the pain management treatments itself are still doing things to the body itself. It's not like speech therapy to change the way that the individual perceives their pain. It's not something that simply alters the brain chemistry of the individual to shut down their pain receptors. It's usually more complicated than that to address the root cause of the pain itself. If a person has an underlying injury. That is asymptomatic. And after working in a repetitive fashion, it becomes symptomatic. And when I say symptomatic, I mean she or he now suffers pain. Is it because of the pain considered to be an aggravation of a pre-existing injury and therefore compensable under the act, or must you establish that the repetitive behavior at work somehow increased the underlying condition by aggravation? A person has, I don't know, something dealing with their spine, but whatever they have is not impinging upon the nerve room. And there's an aggravation at work, and now it's impinging on the nerve room. Now, that's a compensable circumstance, even though the only thing it does is it causes pain now, it didn't before. But the impingement itself is an aggravation of the underlying condition. But what happens if the only thing we have is an underlying condition that is not changed in any fashion by the work being performed, but because of the work, the person now suffers pain? Your thesis is the latter one is non-compensable, I take it. Yeah, and I think that under the existing case law and standards of the act, we would need to see some pretty clear-cut medical testimony to explain how it's possible that somebody's underlying physical condition could not be changed at all whatsoever, zero percent change in the physical condition. But the subjective symptoms of the claimant could still be changed in that situation. I mean, because that's I think that that's a very unusual hypothetical situation. And I think that that set of circumstances requires some clear and explicit medical testimony. Case law cited in the brief and well-established within the commission indicates that we need medical testimony to walk us through some of these complicated medical issues. And in this case, we don't have any kind of extensive medical testimony along those lines. We have a one page report where the explicit statement from the surgeon is that her job duties did not cause her rotator cuff tear. She felt pain while at work. I think it makes sense that she would feel pain at work. I think that anybody with an injury who tries to work through that injury is going to suffer more pain regardless of the original cause or root of that injury. So to the extent that. There is some very atypical situation where the body itself isn't injured at all, but the mind, if you will, the subjective experience of the claimant is somehow permanently altered. I think we need far greater evidence than exists in this case at bar to walk us through how something like that might be possible. OK, so. I'm more than happy to keep addressing these key legal issues of whether pain and subjective symptoms alone are enough to establish causation, because I do think it's critically important not just to this case, but to the bar as a whole. But I think that there's also a lot of significant problems with the commission's decisions that I'd also like to address. But if there's anything else on the DeNovo legal issue at hand, I'm happy to keep discussing this as well. So I could go in either direction. Well, you're getting no more questions on that point, so I think you should continue on. Thank you, Your Honor. So the the entirety of the commission's reasoning and justification for their decision comes in a handful of sentences from two paragraphs at the end of their decision, just before when they address TTV. The commission makes several statements which I think engage in speculation, mischaracterization of the facts, overlooking key facts of the case and entirely backwards reasoning. Specifically. Excuse me. Specifically, the commission states that Dr. Merkley gave the opinion that the claimant suffered a permanent increase of pain. That is an absolute mischaracterization of Dr. Merkley's statements. The word permanent does not appear anywhere in his report, and it's not included anywhere in his opinions as to the causation issues. So for the commission to say, oh, well, Dr. Merkley said that this increased pain was permanent in nature. So that's different. That's pure conjecture on their part. The next thing that they focus on is that Dr. Merkley supposedly gave an opinion that her condition was not the, quote, natural progression of her preexisting condition. This is also something that's not included in the report that the commission appears to have pulled out of thin air and speculated on. The next thing that they focus on is the date of the petition. Could that be, excuse me, arguably a factual finding that it was within their purview to make? I don't see how. I don't see how you can take the burden of proof that the petitioner has in establishing through expert medical testimony and look at the literal language used by Dr. Merkley, who is a well-established professional within not just being a surgeon, but within the work comp system as well, and assume that he's saying anything more than he explicitly wrote in his report. He knows that that would be helpful to the claimant's case. So if he believed that, he knows that he should have put that in the report. And to the extent that it's ambiguous, I don't think that the claimant is given the benefit of the doubt when it's their burden of proof and they chose not to depose him. Thank you. I appreciate your time. Well, you still have time. Oh, that's a yellow. You're you're in the intersection. I apologize. All right. Well, I will move very quickly through these last issues then. So they mischaracterize the statements of Dr. Merkley as to whether the pain was permanent in nature, whether it was a natural progression of her pre-existing condition. And then they focus on the timing of the petitioner's treatment, which for a repetitive trauma case, the accident date was chosen far after her surgery and far after she chose to bring a work claim of work injuries or a worker's compensation claim. And I'm not sure why the court chose to focus on that, but those issues are her mind was that she was terminated. And then after being terminated, that is what led her to then characterize these injuries as work related and bring the claim. The fourth thing that the commission relies on is completely backwards. They focus on the fact that while she was at work, she would feel more pain. But when she would take a break from work, when she was at home on the weekends or not working, that increased pain would go away. This actually supports the employer's position and it undermines the theory that this aggravation, supposed aggravation or increase in pain is permanent in nature. So those are four erroneous things that the commission relied on without addressing any of the other key facts of the case. So thank you for your time. Any questions from the court for their questions? No. OK, thank you, Mr. Elder. You may respond. Nope, your audio, please. Your audio is not on. You're on mute. There's a button there. Yes, thank you, Judge. Sorry, I thought I had that unmuted. Good afternoon, your honors, may it please the court and opposing counsel. My name is Kevin Elder and I represent Miss Potts in this matter. From the tenor of your questions to Mr. Bantz, I'm gathering that to some degree you're looking at this the way that I am. I'll address his claim that it's that there's a legal de novo standard here. He talked a lot about condition. Well, her condition was an asymptomatic rotator cuff tear. And that condition was aggravated by her work activities and made symptomatic. And Dr. Merkley's opinion is exactly that. There's a second when when Mr. Bantz read the first part of Dr. Merkley's causation opinion, there's a second sentence that he did not include. And that is given the repetitive nature of the reaching, pushing and pulling performed with her left shoulder. It is reasonable to assume that based on the patient history, there is a causal relationship of the pain at her left shoulder. So the question that I pose to your opponent, I'll pose it to you, is. If the only manifestation after the repetitive trauma is pain from an otherwise preexisting asymptomatic condition. Is that petitioner entitled to recover under the air? Absolutely, he is, your honor. So pain, the pain is what you identify as the aggravation. Yes, your honor, a perfect example, it was a case that I had with Mr. Bantz, my client had a had a spinal stenosis. She had an accident that caused her to bend backwards. This the condition of her spinal stenosis was not changed at all, except that it was made symptomatic, which that's why we operate. So it forced her into treatment to handle her symptoms. And therefore that's the aggravation of the condition from asymptomatic to symptomatic. And that's why we operate frequently is to relieve pain. So I'm going to guess in that case, the doctor said the work accident aggravated an otherwise asymptomatic condition. Yes, ma'am, that it it it aggravated the stenosis and made it symptomatic. There was never any testimony in that case that the stenosis was made narrower or changed in any other way. And that claim was compensable. And and I was paid. And I think this is the same thing. And I appreciate that that Mr. Bantz is, you know, looking at this issue and defending. Isn't the difference here that is there isn't any testimony that there was an aggravation of her condition? Well, I I think Dr. Merkley's opinion does not use that. And I'm going to guess that he understands its significance because it's a very common term for doctors to use. He doesn't use it. Your Honor, I would agree with you, certainly, that Dr. Merkley could have stated the opinion a little more clearly and use some magic words. But I do believe when I looked at that, I absolutely read that as a causal connection. Honestly, I have to assume that was his medical opinion based on a reasonable degree of medical certainty. That's what caused her pain. He doesn't use the term aggravation. I wouldn't I would not assume that of a competent physician. Well, in this case, the you might have. I think that's what he intended. The panel of three commissioners who are, you know, it's their province to sort this all out. Not a single one of those three had any issue with the causation opinion. Well, I'm reading from their opinion. They specifically said that Merkley opined that there was a causal relationship between the petitioner's left shoulder pain and the repetitive nature of her duty. They go on to say that Lee agreed. With Merkley on this point, but disagreed only to the extent of the petitioner's duties were he said they were not a permanent aggravation or acceleration. I mean, that's the commission. Yes, I think Dr. Lee's opinion was that the the angle of the arm was not enough to have caused it and that any pain that she experienced at work was just a temporary aggravation. I would agree that Dr. Merkley didn't use the word aggravation. The thing that troubles me about this is if you have an asymptomatic condition, let's talk about it by a rotator cuff tear. And then you have repetitive activity at work and now you're suffering pain. Something must have happened to or around the rotator cuff tear to cause the pain. It didn't appear out of thin air. So is it inflammation? Something that the repetitive work does that causes this asymptomatic condition to become symptomatic in the form of pain? I mean, pain doesn't appear out of the air. Something has to happen to the body to cause pain. Wise men once said pain is the way a body's way of telling you there's something wrong. But but something has to cause the pain. Now, the repetitive work didn't cause the pain. The repetitive work caused something to happen to the asymptomatic condition to produce the pain. Work doesn't make pain, work does something to the body. So the body causes pain. So I suppose the question becomes, what is the quantum of proof that you need to establish that something happened to the underlying condition by reason of the work that produced pain? What happened to that condition? That's a good question. Dr. Merkley did not go into the details of how the of exactly how the work activities were producing the pain or changing the condition. Other than, again, I would say changing it from an asymptomatic condition to a symptomatic condition. So, Judge, what we look for in these cases then is in Miss Potts case, she had absolutely no prior treatment to this left shoulder until April when she'd been working for them for 15 years. And so we look at that. If there was a prior condition that was producing pain, we presume that she would treat for that. And there's no such thing. And I think the commission took that. Dr. Merkley took that into consideration. And in the absence of any evidence, and her testimony was also that she didn't have any prior problems, then when those aren't rebutted, I think we're free to follow those and accept them as true. And here they didn't prove that there was any preexisting condition that she was aware of because there is absolutely no treatment. Her testimony wasn't rebutted. It really wasn't rebutted in any way. I'm not going to go into the factual. I will just say this on the factual determinations. That's the commission's job. It's a unanimous panel of commissioners and a circuit court judge who was a work comp attorney forever and ever. And they didn't have a problem with the way the standard, with the way the causation opinion was stated, and they made appropriate factual decisions and determinations and inferences. And I think all of their positions are backed up by some evidence in the record. I won't bore you with that unless we think that there isn't evidence. But I think she showed that that's the way she does the job when the dentist came in and testified, she didn't say that she doesn't do it that way. On one occasion, she saw her doing it a different way. The dentist agreed that sometimes with the plaintiff, excuse me, when the claimant sought treatment, that was April of 19, correct? Yes, ma'am. And she didn't relate any of those symptoms to work activities at that time, did she? There's no mention of her work duties, but she said, it's things like laying, putting my arms. She never said lifting. She didn't do anything with work. And then in January of 2020, Dr. Merkley completed a temporary disability form, didn't he? January 16, 2020 and indicate the left shoulder was not due to work. Did something happen between. That time and October of 2020, when he made this report that said her pain. Was I was I was not aware. That there was a form wherein he said that it wasn't work related, uh, his position certainly made clear in his report that he did feel. That her pain was caused by her work activities, and he causally relates the pain and therefore the need for surgery to her repetitive work activities with keeping her shoulder up. I think somehow keeping her arm up at that raised degree stressed that torn rotator cuff and caused it to become symptomatic exactly how it stressed it and aggravated it. I'm not certain because I'm not a physician. I guess that's my issue is it seems to me that a physician should say. It was aggravated or accelerated, but but be that as it may. If someone outside of work injures themselves. And, or has a condition and then comes in the next day and complains. That I, it hurts when I'm here at work. Is that compensable? No, I don't believe it should be. If we know that the injury occurred outside of work, like Mr. Bantz used in his brief, an example of a broken arm. Well, of course, a broken arm is going to hurt anywhere. I've broken several bones and I would not expect if I broke my arm at home and went in and worked with it broken. That pain is clearly due to the fracture that occurred outside of work. And I would not, I would not imagine that any arbitrator would find that compensable. It's when the pain is produced by the work to an asymptomatic condition. I think the case law is crystal clear that aggravation. Or acceleration of an asymptomatic condition is compensable. And I think that's what we have here. Although probably a little bit poorly stated by Dr. Merkley. I looked at the opinion and I didn't see a problem with it. And that's why I was willing to come into, you know, let that into evidence. And if the other side had had a problem with it, I suppose they could have required a deposition. But at the time, there was no problem expressed, at least with the opinion. So I believe that the applicable standard. How do you define condition of ill-being? I asked Mr. Bantz that, so if you don't mind. I would agree that it's some kind of a physical abnormality. But a condition can be an asymptomatic rotator cuff tear. And a different condition can be a symptomatic rotator cuff tear. There's a difference between those two, a big difference. And I think that's the change that occurred after accumulation of her work activities. So I would urge that the appropriate standard of review is whether the commission's decisions were against the manifest weight of the evidence. And I believe that there is ample evidence supporting all of their determinations. And I would ask this court to affirm the decision of the Workers' Compensation Commission. Any further questions from the court? No? Okay. Thank you. Mr. Bantz, you may reply. Thank you. So there's a variety of issues I'd like to address relatively quickly. Counsel implied that Dr. Merkley's opinion was that the need for surgery was due to her repetitive work duties. He never said that anywhere in his report. He never stated that. And he's a well-educated, smart guy. Both Mr. Elder and myself have deposed him many times. He knows that that's important to the case. And he would say that if he thought that that was the case. And to the extent, again, that there is some ambiguity, the burden of proof is on the claimant. And it was their decision not to depose their own expert. You had asked a critical question, I think, Justice Mullen. What had changed between January and October of 2020? Well, unfortunately, what had changed is that the claimant was terminated. And the claimant's own testimony was that she no longer felt loyalty to the county after being terminated. And that's when she filed her application. And that's when they sought the causation opinions of Dr. Merkley. And that's where everything changed regarding her treatment. Because every time that she presented to a physician, she never attributed her condition or her symptoms to her job duties. And in fact, when she was directly asked on questionnaires, whether this was related to a work injury or whether she had filed or planned on filing, she herself chose to write no, that it was not related to a work injury. But doesn't that go to the question of accident, not causation? So the question of accident in a repetitive trauma case is, I would say, nebulous. I would say that it often gets mixed up with the causation question. The repetitive trauma is the accident. If a person doesn't have repetitive trauma of any kind, then whether there is a condition of ill-being is irrelevant because we have no accident. But it occurs to me that in a repetitive trauma case, the repetitive trauma itself over time is the accident we're talking about. As a manifestation date, a given manifestation date, but it's the accident. So I'm still stuck on the question of whether if you have an asymptomatic rotator cuff tear and you have repetitive trauma of accident, and now you have a symptomatic rotator cuff tear and the symptom is pain, something has to happen to that asymptomatic tear to cause that pain. It didn't come out of the air. So what happened? It has to be something that affects the asymptomatic condition to cause the pain. Pain is not a condition. Pain is a manifestation of a condition. So the question becomes, what's the condition? I mean, what happened to the asymptomatic rotator cuff tear that caused pain? Well, we don't know everything about what Ms. Potts did outside of work or what was going on in her life. We've never had constant surveillance on her. There's a lot of information we don't have. What we do have is opinions from two medical experts in this case. Both medical experts explicitly stated that she had pre-existing rotator cuff tear that was not from her work duties. That much is clear. In addressing the repetitive trauma aspects of the case, I think that the commission completely failed to assess whether or not she even suffered repetitive trauma at work, whether or not the nature of her job duties constituted repetitive trauma. And as for the allegedly unrebutted testimony of the petitioner as her job duties, I don't think that's accurate at all. I think Dr. Wright clearly rebuts the testimony of the claimant as to her job duties and clearly explains that the proper procedure and typical handling of dental hygienists, including the claimant, is to use the arms at the waist level rather than at the shoulder level. And in fact, if you've been to your own dental cleanings or have one coming up, you'll notice that the hygienist will lower your seat and that they'll keep their arms at their waist. But the commission didn't address whether the variety of different tasks she performed actually constitute repetitive trauma. I argue that they don't and that the commission engaged in speculation and overlooked those critical facts to assess whether there was even repetitive trauma to begin with. She performed a lot of different types of tasks at her job, and she clearly exaggerated as to how many patients she actually saw. Excuse me. But to go back to your question, Mark, thank you for your time. OK, thank you. Questions from the court? Further questions? No? OK, well, thank you, counsel, both for your arguments in this matter this afternoon. It will be taken under advisement and a written disposition shall issue. This time, the clerk of our court will escort you out of our remote courtroom and we'll proceed to conference. Have a good afternoon.